**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JENNIFER L. MAK, and WILLIAM R. NEIDIG, individually, and on behalf of all others similarly situated,** | |
| **Plaintiffs,** | **Case No. 3:25-cv-00238-JFS** |
| **v.** | |
| **MOUNT AIRY #1, LLC d/b/a MOUNT AIRY CASINO RESORT,** | |
| **Defendant.** | |

**MEMORANDUM OF LAW
IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR
<u>FINAL APPROVAL OF CLASS ACTION SETTLEMENT</u>**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................... iii

INTRODUCTION ..............................................................................1

I.    ISSUANCE OF NOTICE AND REACTION OF CLASS MEMBERS ........2

II.    THE SETTLEMENT SHOULD BE GRANTED FINAL APPROVAL........3

    A.    The Standard for Final Approval. .........................................................3

    B.    The Proposed Settlement is Fair, Reasonable, and Adequate...............5

        1.    Class Counsel Have Adequately Represented the Class. ...........5

        2.    The Settlement Was Negotiated at Arm's Length. .....................7

        3.    The Relief Provided to the Class is Adequate. ...........................7

            a.    The relief provided to the class is adequate considering the
costs, risks, and delay of trial and appeal. ........................9

            b.    The relief provided to the class is adequate considering
the effectiveness of distributing relief to the class. ........11

            c.    The relief provided to the class is adequate considering the
terms of the proposed award of attorneys' fees..............11

            d.    The relief provided to the class is adequate considering there
are no agreements required to be identified under Rule
23(e). ..............................................................................12

        4.    The Settlement Treats Class Members Equitably to One
Another......................................................................................12

        5.    The Reaction of the Settlement Class Favors Approval. ..........13

III.    CLASS CERTIFICATION FOR SETTLEMENT PURPOSES ...................13

IV.    THE APPROPRIATE RELEASE OF FLSA CLAIMS................................14

V.  CONFIRMATION OF APPOINTMENT OF CLASS COUNSEL .................16

VI.     CONCLUSION..........................................................................................16

CERTIFICATE OF SERVICE ...............................................................................19

# **TABLE OF CONTENTS**

**Cases**

*Bartakovits v. Wind Creek Bethlehem, LLC*,
  2022 WL 702300 ..................................................................................................12

*Dillworth v. Case Farms Processing, Inc.*,
  2010 WL 776933 (N.D. Ohio Mar. 8, 2010).........................................................8

*Ehrheart v. Verizon Wireless*,
  609 F.3d 590 (3d Cir. 2010) ...................................................................................3

*Girsh v. Jepson*,
  521 F.2d 153 (3d Cir. 1975) ...................................................................................4

*Huffman v. Prudential Ins. Co. of Am.*,
  2019 WL 1499475 (E.D. Pa. Apr. 5, 2019)............................................................4

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001) .................................................................................13

*In re NFL Players Concussion Injury Litig.*,
  821 F.3d 410 (3d Cir. 2016) ...................................................................................5

*In re Orthopedic Bone Screw Prods. Liab. Litig.*,
  176 F.R.D. 158 (E.D. Pa. 1997) ...........................................................................13

*In re Schering-Plough Corp. Enhance Sec. Litig.*,
  2013 WL 5505744 (D.N.J. Oct. 1, 2013)..............................................................13

*In re Viropharma Inc. Sec. Litig.*,
  2016 WL 312108 (E.D. Pa. Jan. 25, 2016) ............................................................7

*James v. Boyd Gaming Corp.*,
  2021 WL 794899 (D. Kan. Mar. 2, 2021)..............................................................6

*Johnson v. Cmty. Bank, N.A.*,
  2013 WL 6185607 (M.D. Pa. Nov. 25, 2013).........................................................2

*Kauffman v. U-Haul Int'l, Inc.*,
  2019 WL 1785453 (E.D. Pa. Apr. 24, 2019).....................................................8, 15

*Kutz v. Cargill Cocoa & Chocolate, Inc.*,
  2019 WL 5457776 (M.D. Pa. Oct. 23, 2019) .................................................. 14, 15

*Larson v. Isle of Capri Casinos, Inc.*,
  2018 WL 6495074 (W.D. Mo. Dec. 10, 2018) ......................................................6

*Lockett v. Pinnacle Ent., Inc.*,
  408 F. Supp. 3d 1043 (W.D. Mo. 2019) ..................................................................6

*Lockett v. Pinnacle Ent., Inc.*,
  2021 WL 960424 (W.D. Mo. Mar. 12, 2021) ........................................................6

*MacMann v. Tropicana St. Louis, LLC*,
  2021 WL 1105500 (E.D. Mo. Mar. 23, 2021)........................................................6

*Mehling v. N.Y. Life Ins. Co.*,
  248 F.R.D. 455 (E.D. Pa. 2006) ..............................................................................8

*Singleton v. First Student Mgmt. LLC*,
  2014 WL 3865853 (D.N.J. Aug. 6, 2014) ..............................................................4

*Southwood v. Milestone Mgmt. PAFeasterville, LLC*,
  2020 WL 5554396 (E.D. Pa. Sept. 15, 2020)........................................................8

*Stansbury v. Barrick Enters., Inc.*,
  2025 WL 1640734, n.7 (M.D. Pa. June 9, 2025) ...............................................5, 7

*Yong Li v. Fam. Garden II, Inc.*,
  2019 WL 1296258 (E.D. Pa. Mar. 20, 2019) ................................................ 14, 15

**Statutes**

29 U.S.C. § 260 ...........................................................................................................10

**Rules**

Fed. R. Civ. P. 23 ............................................................................... *passim*

## **INTRODUCTION**

Plaintiffs are sub-minimum wage workers at the Mount Airy casino in Mount Pocono, Pennsylvania who brought federal and state wage claims against the casino. They asserted Mount Airy failed to provide notice of the tip credit before paying a sub-minimum wage, operated an unlawful tip pool whereby tips were paid to managers and non-tipped employees for paid time off, rounded timeclock entries resulting in unpaid wages, and failed to include the tip credit in the regular rate when paying overtime under federal and Pennsylvania law. Following an arm's-length mediation, Plaintiffs reached a non-reversionary 2.3 million settlement with Mount Airy representing over 98% of unpaid wages. After completing an individualized notice program that successfully provided direct notice by mail to 686 of the 696 class members, no class members objected to or opted out of the settlement.

The objective metrics demonstrate why class members responded favorably. After deducting the cost of settlement administration, service awards, and Class Counsel's reasonable attorneys' fees and expenses from the settlement fund, the average estimated settlement payment is over $2,100 *per capita*, the largest payment exceeds $11,000, and no class members will receive less than $100. Further, there is no claims process; class members will automatically receive a check in the mail for their *pro rata* share of the settlement fund based on their proportional tip credit

damages. In exchange for these payments, class members provide a release of claims tailored to the facts alleged in the complaint.

Class Counsel delivered a strong result, for which they seek the standard one-third fee and $7,439.93 in expenses. *See, e.g., Johnson v. Cmty. Bank, N.A.*, 2013 WL 6185607, at *8 (M.D. Pa. Nov. 25, 2013) ("award of one-third of the settlement is consistent with this Court's prior decisions and with cases decided throughout the Third Circuit."). The requested one-third fee is a 2-times lodestar multiplier further demonstrating the reasonableness of the fee. Class Counsel also request $10,000 service awards for Plaintiffs Mak and Neidig who attached their names to a multi-million-dollar lawsuit against their current employer. As with the other terms of the settlement, no class members objected to the requested attorneys' fees, expenses, or service awards. Final approval of this class action settlement is warranted.

## I.    ISSUANCE OF NOTICE AND REACTION OF CLASS MEMBERS[1]

Consistent with the Court's Order (Doc. 59), Analytics Consulting LLC mailed the Court-approved notices by first class mail on November 25, 2025 to class members' last-known address. Mitchell Decl. at ¶ 8. Prior to mailing, all addresses were updated using the National Change of Address database maintained by the

---

[1] Plaintiff addressed the nature of the claims, procedural history, and settlement terms at length in connection with preliminary approval. *See* Doc. 52 at 2-13. For the sake of brevity, Class Counsel addresses relevant factual and legal issues in the context of the operative factors regarding settlement approval and will not repeat the entire discussion here.

United States Postal Service. *Id.* at ¶ 7. For all class notices returned as undeliverable, Analytics took measures to ensure that those class members' notices were then sent to corrected addresses. *Id.* at ¶ 9-10. Out of 696 class notices, only 10—approximately 1.44%—were ultimately undeliverable, meaning over 98% of class members received individual notice by First Class U.S. Mail. *Id.* at ¶ 11. The deadline for class members to opt-out or exclude themselves from the settlement was January 9, 2026. *Id.* at ¶ 13. No class members objected to the settlement, and no class members requested to be excluded from the settlement. *Id.*

## II.    THE SETTLEMENT SHOULD BE GRANTED FINAL APPROVAL

### A.    THE STANDARD FOR FINAL APPROVAL.

Rule 23(e) requires court approval for any settlement of a class action, and courts within this circuit have a "strong judicial policy in favor of class action settlement[.]" *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010). Rule 23(e) provides that the Court should grant final approval to a class action settlement if it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Rule 23(e)(2)—which governs final approval—requires courts to consider whether:

(A) the class representatives and class counsel have adequately represented the class;
(B) the proposal was negotiated at arm's length;
(C) the relief provided for the class is adequate, taking into account:
    (i) the costs, risks, and delay of trial and appeal;
    (ii) the effectiveness of any proposed method of distributing relief to the class,

(iii) the terms of any proposed award of attorneys' fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

In addition, the four factors set forth in Rule 23(e)(2) are not intended to "displace" any factor previously adopted by the courts, but "rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Advisory Committee Notes (Dec. 1, 2018) on Fed. R. Civ. P. 23 ("Advisory Committee Notes"); *see also Huffman v. Prudential Ins. Co. of Am.*, 2019 WL 1499475, at *3 (E.D. Pa. Apr. 5, 2019). For this reason, the traditional factors that are utilized by courts in the Third Circuit—known as the "*Girsh* factors"—to evaluate the propriety of a class action settlement (nearly all of which overlap with Rule 23(e)(2)) are still relevant:

(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) stage of the proceedings and the amount of discovery completed; (4) risks of establishing liability; (5) risks of establishing damages; (6) risks of maintaining the class action through the trial; (7) ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Singleton v. First Student Mgmt. LLC*, 2014 WL 3865853, at *5 (D.N.J. Aug. 6, 2014) (*citing Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975)).[2]

---

[2] Plaintiffs address the factors set out in *Girsh v. Jepson* within the Rule 23(e) factors where possible for brevity. 521 F.2d 153, 157 (3d Cir. 1975). The adequacy of

Applying these standards, the Court should grant final settlement approval.

**B.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE.**

Pursuant to Rule 23(e)(2), the Court may grant final approval of a class action settlement if the four factors are satisfied, each of which Plaintiffs address in turn.

### 1.    Class Counsel Have Adequately Represented the Class.

This factor focuses "on the actual performance of counsel acting on behalf of the class." Advisory Committee Notes; *see also In re NFL Players Concussion Injury Litig.*, 821 F.3d 410, 439 (3d Cir. 2016) (class counsel should "develop[] enough information about the case to appreciate sufficiently the value of the claims").

Here, the adequacy factor is satisfied. First, Class Counsel have devoted much of their practice over the last decade to prosecuting wage and hour claims against casino operators having collectively prosecuted around 25 such cases, including the same claims at issue in this case. Because of this experience, Class Counsel have a deep knowledge of wage and hour practices in this industry, the type of evidence that typically exists, and how to value these claims against common defenses. Ricke

---

representation factor subsumes *Girsh* factor 3 "the stage of the proceedings and amount of discovery completed." *Stansbury v. Barrick Enters., Inc.*, 2025 WL 1640734, at \*9, n.7 (M.D. Pa. June 9, 2025). Plaintiffs note that the *Girsh* factors substantially overlap with the Rule 23(e) factors.

Decl., Doc. 61-1 at ¶¶ 2-16.[3] Second, through fact investigation with the scores of

opt-in plaintiffs and specific document and data requests done in connection with

mediation, Class Counsel possess the information necessary to evaluate the merits

of the claims and calculate damages, including: Mount Airy's contentions as to how

it claimed it provided notice of the FLSA and PMWA's tip credit requirements to its

tipped employees, a comprehensive understanding of Mount Airy's tip pooling and

timeclock rounding policies and procedures, and the casino-wide wage and hour data

to calculate class-wide damages (which entailed reviewing more than 40,000 payroll

records for hundreds of class members).

---

[3] Class Counsel have successfully litigated wage and hour claims against casino operators around the country recovering tens of millions of dollars for these workers. *See, e.g., James v. Boyd Gaming Corp.*, 2021 WL 794899 (D. Kan. Mar. 2, 2021) (conditionally certifying tip credit notice and tip pooling claims across 13 casinos and 9 casinos, respectively); *Lockett v. Pinnacle Ent., Inc.*, 2021 WL 960424 (W.D. Mo. Mar. 12, 2021) (conditionally certifying tip pooling and gaming license wage deduction claims across 10 casinos and 8 casinos, respectively, while also certifying Missouri and Iowa state law claims under Rule 23); *MacMann v. Tropicana St. Louis, LLC*, 2021 WL 1105500 (E.D. Mo. Mar. 23, 2021) (conditionally certifying four FLSA claims at Lumiere casino, including tip credit notice and gaming license wage deductions, while also certifying Missouri state law claims under Rule 23); *Larson v. Isle of Capri Casinos, Inc.*, 2018 WL 6495074, at *1 (W.D. Mo. Dec. 10, 2018) (conditionally certifying tip credit notice and timeclock rounding claims at Isle of Capri casino); *Lockett v. Pinnacle Ent., Inc.*, 408 F. Supp. 3d 1043, 1045 (W.D. Mo. 2019) (holding that gaming licenses primarily benefit casino employers such that deducting costs associated with gaming licenses from employees' wages results in a minimum wage violation).

## 2.    The Settlement Was Negotiated at Arm's Length.

This factor focuses on whether the settlement negotiations "were conducted in a manner that would protect and further the class interests." *See* Fed. R. Civ. P. 23(e), Advisory Committee Notes. Here, this factor is satisfied because the settlement was achieved through arm's-length mediation. Ricke Decl., Doc. 52-1 at ¶ 6; *In re Viropharma Inc. Sec. Litig.*, 2016 WL 312108, at *8 (E.D. Pa. Jan. 25, 2016) (noting that "participation of an independent mediator … virtually [e]nsures that the negotiations were conducted at arm's length and without collusion between the parties") (internal quotations omitted).

## 3.    The Relief Provided to the Class is Adequate.[4]

Rule 23(e) charges the Court to consider whether the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any

---

[4] This factor overlaps with the following *Girsh* factors: factor 1 ("complexity, expense, and likely duration of the litigation"); factors 4 and 5 ("which assess the risks of establishing liability and damages"); factor 8 ("the range of reasonableness of the settlement fund in light of the best possible recovery"); and factor 9 ("the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation"). *Stansbury*, 2025 WL 1640734, at *9, n.8.

agreement required to be identified under Rule 23(e)(3). *See* Fed. R. Civ. P. 23(e)(2)(C)(i-iv). Here, this favors settlement approval.

All of the factors identified by Rule 23(e)(2)(C) should be viewed in light of the meaningful monetary benefit this settlement confers on class members, that class members will be mailed a check without the need to participate in a claims process, the limited release, and the legitimate risks the claims faced. Based on class-wide wage and hour data, Class Counsel calculated the universe of estimated unpaid wages of nearly $2,325,000 such that the $2,300,000 common fund represents over 98% of the estimated actual unpaid wages alleged in this case. Likewise, the average settlement payment—net of all fees and costs—will exceed $2,100, and no class member will recover less than $100. That is a significant recovery in any wage case (and class actions generally).[5]

---

[5] *See, e.g., Kauffman v. U-Haul Int'l, Inc.*, 2019 WL 1785453, at *3 (E.D. Pa. Apr. 24, 2019) (approving wage and hour settlement where "Plaintiff will receive payment of a meaningful portion (approximately 28%) of his alleged unpaid overtime wages..."); *Mehling v. N.Y. Life Ins. Co.*, 248 F.R.D. 455, 462 (E.D. Pa. 2006) (approving settlement that represented 20% of best possible recovery and noting courts that have approved settlements with even lower ratios); *Dillworth v. Case Farms Processing, Inc.*, 2010 WL 776933, at *8 (N.D. Ohio Mar. 8, 2010); (approving a class action settlement that recovered "approximately one-third of claimed unpaid wages" and finding "there can be no doubt that the results achieved for the class members are exceptional."); *Southwood v. Milestone Mgmt. PAFeasterville, LLC*, 2020 WL 5554396, at *4 (E.D. Pa. Sept. 15, 2020) (approving FLSA and PMWA settlement for "54% of the amount Plaintiff claims to be owed" and finding this to be a "positive result.").

Further, the percentage of unpaid wages recovered, the size of the common fund, and the amount of the individual payments compare favorably to settlements of other tip credit notice claims. Every case stands on its own, but looking to other similar cases can give context to the strength of a result. For example, in a recent case in the Western District of Pennsylvania, the district court approved a class action settlement of federal and Pennsylvania tip credit claims similar to those at issue in this case. *See Koenig v. Granite City Food & Brewery, LTD, et al.*, Case No. 2:16-cv-01396, Doc. 125 (W.D. Pa. March 28, 2018). The *Koenig* settlement provided for a $305,000 common fund representing 41.7% of the unpaid minimum wages at issue and provided for a $703.73 average payment. *Id.* at ¶¶ 10, 14. By any metric, the relief in this case—$2,300,000 common fund, over 98% of unpaid wages recovered, estimated average settlement payment of $2,100—compares favorably to the relief in *Koenig*. Ricke Decl., Doc. 52-1 at ¶¶ 10-11.

### a. The relief provided to the class is adequate considering the costs, risks, and delay of trial and appeal.

Procedurally, the settlement provides a class-wide recovery immediately with no risks associated with obtaining and maintaining class and collective certification. Although Plaintiffs are confident their claims should proceed on a representative basis, that result is not guaranteed. As to the merits, there were risks, particularly with respect to the tip credit claims. Mount Airy's defenses must be weighed in evaluating the adequacy of the recovery.

Mount Airy had multiple claimed methods of providing tip credit notice (both verbal and written) and issued a remedial tip credit notice after the lawsuit was filed to cut off the accrual of damages. If the Court or a jury accepted any of Mount Airy's arguments as to how it provided tip credit notice, it would have significantly decreased the value of Plaintiffs' tip credit claims. Although the tip credit notice claim drove exposure, the other claims also faced dispositive risks. For example, if the Court or the jury determined that Dual Rate Supervisors were not managers or supervisors and did qualify as tipped employees, the class would recover nothing on the tip pooling claim. *See* Ricke Decl., Doc. 52-1 at ¶ 12 (explaining the risks each claim faced). Under these circumstances, a recovery of over 98% of estimated unpaid wages represents a "fair, reasonable, and adequate" recovery. *See* Fed. R. Civ. P. 23(e)(2).

The only value in proceeding further would be to obtain liquidated damages under the FLSA.[6] To do so, Plaintiffs would be required to win outright, which would require obtaining collective and class certification, defeating motions for class and collective decertification, defeating motions for summary judgment, prevailing at trial, and prevailing on appeal. Plaintiffs would likely then need to prevail on the

---

[6] For this reason—*i.e.*, the recovery of near-make-whole relief to the class—the *Girsh* factor regarding "ability to withstand a greater judgment" (factor 7) is neutral and should carry little weight in the Court's analysis. *Mehling*, 248 F.R.D. 455, 462 ("the Court does not afford [the ability to withstand greater judgment] significant weight" where settlement negotiated based on litigation risk, not ability to pay.

issue of whether Mount Airy's wage practices were done in good faith to obtain an award of liquidated damages under the FLSA. 29 U.S.C. § 260. This process would be long, costly, and risky. This factor weighs in favor of settlement approval.

> b.     **The relief provided to the class is adequate considering the effectiveness of distributing relief to the class.**

Under this factor, the Court "scrutinize[s] the method of claims processing to ensure that it facilitates filing legitimate claims" and "should be alert to whether the claims process is unduly demanding." Advisory Committee Notes. Here, there is no claims process. Every class member will be mailed a check for their proportional settlement share upon final approval. This factor supports settlement approval.

> c.     **The relief provided to the class is adequate considering the terms of the proposed award of attorneys' fees.**

This factor recognizes that "[e]xamination of the attorney-fee provisions may also be valuable in assessing the fairness of the proposed settlement." Advisory Committee Notes. Consistent with the Settlement Agreement, Class Counsel petitioned the Court for an award of attorneys' fees totaling one-third of the common fund ($766,666.66) plus reimbursement of reasonable expenses of $7,439.93. *See* Settlement Agreement, Doc. 52-2 at ¶ III.D; Doc. 60.

As Class Counsel explained in their motion for attorneys' fees, the *Gunter* and *Prudential* factors support the requested one-third award of attorneys' fees based principally on the results achieved through the skill, experience, and reputation of

Class Counsel. Doc. 60 at 3-17. To that end, in awarding Class Counsel a one-third fee in a $6 million settlement of similar casino wage claims, Judge Leeson of the Eastern District of Pennsylvania described Class Counsel as "uniquely skilled and efficient in prosecuting casino wage and hour cases." *Bartakovits v. Wind Creek Bethlehem, LLC*, 2022 WL 702300, at *3. The percentage-based fee is confirmed reasonable by the 2-times lodestar multiplier, which will continue to decrease as Class Counsel moves the settlement through administration. Doc. 60 at 17-18. Further, no class members objected to the requested award of attorneys' fees after providing class members with direct notice. This factor is satisfied and weighs in favor of settlement approval.[7]

> **d.    *The relief provided to the class is adequate considering there are no agreements required to be identified under Rule 23(e).***

The only agreement between the parties is the Settlement Agreement. Ricke Decl., Doc. 52-1 at ¶ 7. This factor weighs in favor of settlement approval.

> **4.    The Settlement Treats Class Members Equitably to One Another.**

This factor seeks to prevent the "inequitable treatment of some class members vis-à-vis others." Advisory Committee Notes. After allocation of a $100 payment to

---

[7] To the extent the Court would like further information on this issue, Class Counsel will be prepared at the final approval hearing to provide an updated lodestar cross-check that accounts for intervening work on settlement administration, class member communications, and the motion for final approval.

all class members, the remainder of the net fund is fairly and equitably allocated in proportion to class members' individual tip credit damages. Settlement Agreement, Doc. 52-2 at ¶ III.A. This factor weighs in favor of settlement approval.

### 5.    The Reaction of the Settlement Class Favors Approval.

"This factor requires the Court to evaluate whether the number of objectors, in proportion to the total class, indicates that the reaction of the class to the settlement is favorable." *In re Schering-Plough Corp. Enhance Sec. Litig.*, 2013 WL 5505744, at *2 (D.N.J. Oct. 1, 2013). The absence of significant objections to a proposed class action settlement raises a strong presumption that the terms of the settlement are favorable to the class members. *See In re Orthopedic Bone Screw Prods. Liab. Litig.*, 176 F.R.D. 158, 185 (E.D. Pa. 1997) (stating that a "relatively low objection rate militates strongly in favor of approval of the settlement") (cleaned up).

Here, out of 696 class members, no class member objected, and no class member requested to be excluded from the settlement. The lack of objections and opt outs further supports final approval. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001).

## III.    CLASS CERTIFICATION FOR SETTLEMENT PURPOSES

Because the requirements for approval of the settlement under Rule 23(e)(2) have been met, the Court can turn to the question of class certification. In granting preliminary approval, the Court previously certified the following class:

> All employees for whom Mount Airy Casino Resort took a tip credit (*i.e.*, paid a direct cash wage of $7.24 per hour or less) at any time from February 7, 2022, through May 8, 2025.

*See* Order, Doc. 59 at ¶ 4. There is no reason to depart from that decision in connection with final approval of the settlement. For the reasons discussed at length in connection with the motion preliminary approval, Plaintiffs readily satisfy the Rule 23(a) and (b)(3) factors and the Court may certify the class for purposes of entering judgment on the Settlement Agreement. *See* Doc. 52 at 21-29. Further, the lack of objections to the settlement raising individual issues further supports class certification for settlement purposes. *See* Fed. R. Civ. P. 23(b)(3).

## IV.    THE APPROPRIATE RELEASE OF FLSA CLAIMS

For the same reasons that the settlement is fair, reasonable, and adequate under Rule 23(e), the settlement likewise is a fair and reasonable resolution of a *bona fide* dispute warranting approval of the FLSA release for those class members who negotiate their settlement checks. Courts in the Third Circuit describe the standard for approving settlements resolving FLSA claims as follows:

> A proposed settlement resolves a bona fide dispute when it reflect[s] a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute, rather than a mere waiver of statutory rights brought about by an employer's overreaching. In determining whether a compromise is fair and reasonable, courts in this Circuit consider both: (1) whether the compromise is fair and reasonable to the employee, and (2) whether the compromise otherwise frustrates the implementation of the FLSA.

*See Yong Li v. Fam. Garden II, Inc.*, 2019 WL 1296258, at *2 (E.D. Pa. Mar. 20, 2019) (internal citations and quotations omitted); *Kutz v. Cargill Cocoa & Chocolate, Inc.*, 2019 WL 5457776, at *2 (M.D. Pa. Oct. 23, 2019) (same).

In this case, the parties vigorously disputed whether Mount Airy provided adequate notice of the FLSA's tip credit requirements, with Mount Airy raising several factual and legal challenges to Plaintiffs' claims regarding the tip credit. The same is true of whether Dual Rate Supervisors perform the job duties necessary to qualify as a manger or supervisor such that distribution of tips to them for paid time off is unlawful. The Court can conclude this litigation involved a *bona fide* dispute of FLSA liability. *Kutz*, 2019 WL 5457776, at *3 (*bona fide* dispute as to threshold issue of whether worker was lawfully classified as exempt).

Further, the recovery of 98% of unpaid minimum wages for the class represents a fair and reasonable compromise of legitimately disputed liability under the FLSA. *See Kauffman v. U-Haul Int'l, Inc.*, 2019 WL 1785453, at *3 (E.D. Pa. Apr. 24, 2019) (approving FLSA settlement where plaintiff recovered 28% of alleged unpaid overtime and referring to settlement as "payment of a meaningful portion… of his alleged unpaid overtime wages"). Likewise, the class members' release of claims in this case is narrowly tailored to the facts asserted in the complaint, which were the subject of extensive investigation and informal discovery in connection with mediation, and there is no confidentiality provision. *Yong Li*,

2019 WL 1296258 at *3 (holding appropriately narrow release meant the settlement did not frustrate the purpose of the FLSA). Lastly, only those class members who sign and negotiate their settlement checks thereby evidencing their intent to participate will release their FLSA claims. *See* Settlement Agreement, Doc. 52-2 at ¶¶ I.EE, III.E.2. The release of FLSA claims under these circumstances is a fair and reasonable resolution of a *bona fide* dispute warranting approval.

## V.    CONFIRMATION OF APPOINTMENT OF CLASS COUNSEL

The Court should confirm its appointment of Stueve Siegel Hanson LLP and McClelland Law Firm, P.C. as Class Counsel pursuant to Rule 23(g). In addition, because Plaintiffs Mak and Neidig have diligently and successfully fulfilled their responsibilities as the representatives of the class, the Court should confirm its appointment of them as class representatives.

## VI.    CONCLUSION

Plaintiffs respectfully request that the Court grant final approval of the class action settlement in this matter as fair, reasonable, and adequate; grant final class certification of the settlement class because it satisfies the requirements of Rule 23(a) and (b)(3); approve the tailored release of FLSA claims as a fair and reasonable resolution of a *bona fide* dispute; confirm the appointment Class Counsel to represent the settlement class; confirm the appointment Analytics Consulting LLC to administer the settlement; approve the requested one-third award of attorneys'

fees plus reimbursement of expenses totaling $7,439.93; approve the requested $10,000 service wards for Plaintiffs Mak and Neidig; and order the parties to abide by the Settlement Agreement (Doc. 52-2).

Dated:  January 22, 2026                 Respectfully submitted,

**WEISBERG CUMMINGS, P.C.**
Derrek W. Cummings, Esq., PA Bar 83286
Larry A. Weisberg, Esq., PA Bar 83410
2704 Commerce Dr., Suite B
Harrisburg, Pennsylvania 17110
Telephone: (717) 238-5707
Facsimile: (717) 233-8133
dcummings@weisbergcummings.com
lweisberg@weisbergcummings.com

**STUEVE SIEGEL HANSON LLP**
George A. Hanson, Mo. Bar 43450*
Alexander T. Ricke, Mo. Bar 65132*
Caleb J. Wagner, Mo. Bar 68458*
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone: 816-714-7100
Facsimile: 816-714-7101
hanson@stuevesiegel.com
ricke@stuevesiegel.com
wagner@stuevesiegel.com

**McCLELLAND LAW FIRM, P.C.**
Ryan L. McClelland, Mo. Bar 59343*
The Flagship Building
200 Westwoods Drive
Liberty, Missouri 64068
Telephone: 816-781-0002
Facsimile: 816-781-1984
ryan@mcclellandlawfirm.com

*Admitted pro hac vice*

**CLASS COUNSEL**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 22, 2026, a true and correct copy of the foregoing document was filed electronically through the Court's CM/ECF system, and therefore, will be transmitted to all counsel of record by operation of the Court's CM/ECF system.

/s/ *Alexander T. Ricke*

**CLASS COUNSEL**